UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KERCHAI LeFLOR, individually and on behalf of all others similarly situated,<br><br>v.<br><br>ASCENSION HEALTH ALLIANCE d/b/a ASCENSION and ASCENSION HEALTH d/b/a ASCENSION | **Case No. 4:22-cv-00496**<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action |

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

## Summary

1. Like many other companies across the United States, Ascension Health Alliance and Ascension Health's (together, "Ascension") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Ascension's organization.

3. As a result, Ascension's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4. Kerchai LeFlor is one such Ascension worker.

5. Ascension could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6. But it didn't. Instead, Ascension pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. Ascension made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. After significant delay, Ascension made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9. Ascension's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Ascension's failure to pay wages, including proper overtime, for all hours worked to its workers in Michigan also violates the Mighigan Workforce Opportunity Wage Act (MWOWA), MICH. COMP. LAWS § 408.411 *et seq.*

11. LeFlor brings this lawsuit to recover these unpaid overtime wages and other damages owed by Ascension to her and Ascension's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Ascension's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Ascension to all these workers, along with the penalties, interest, and other remedies provided by federal and Michigan law.

### JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Ascension is headquartered in this District.

## PARTIES

16. **Plaintiff Kerchai LeFlor** is a natural person.

17. LeFlor was, at all relevant times, an employee of Ascension.

18. LeFlor has worked for Ascension since before December 2021.

19. LeFlor worked for Ascension in Michigan.

20. LeFlor represents at least two groups of similarly situated Ascension workers.

21. LeFlor represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Ascension (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**[1]

22. LeFlor represents a class of similarly situated workers under Michigan law pursuant to Federal Rule of Civil Procedure 23. This "Michigan Class" is defined as:

> **All current or former non-exempt employees of Ascension (including its subsidiaries and alter egos) who worked in Michigan at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

23. Throughout this Complaint, the FLSA Collective members and Michigan Class members are referred to jointly as the "Similarly Situated Workers."

---

[1] The FLSA Collective excludes those persons who opt-into or otherwise become a party plaintiff in *Anstead v. Sacred Heart Health System, Inc.*, No. 3:22-cv-02553-MCR-HTC (N.D. Fla.).

24. **Defendant Ascension Health Alliance d/b/a Ascension** is a domestic corporation.

25. Ascension Health Alliance is headquartered in this District.

26. Ascension Health Alliance may be served by service upon its registered agent, **CSC-Lawyers Incorporating Service Company, 221 Bolivar St., Jefferson City, MO 65101**, or by any other method allowed by law.

27. **Defendant Ascension Health d/b/a Ascension** is a domestic corporation.

28. Ascension Health is headquartered in this District.

29. Ascension Health may be served by service upon its registered agent, **CSC-Lawyers Incorporating Service Company, 221 Bolivar St., Jefferson City, MO 65101**, or by any other method allowed by law.

30. At all relevant times, Ascension Health Alliance has been doing business under the assumed name, "Ascension."

31. At all relevant times, Ascension Health has been doing business under the assumed name, "Ascension."

32. Throughout this Complaint, Ascension Health Alliance, Ascension Health, and their subsidiaries and alter egos are referred to jointly as "Ascension."

33. Ascension operates medical facilities throughout the United States.

34. The facilities operated by Ascension include, but are not limited to:

- Anatomi Imaging
- Ascension Calumet Medical Cetner
- Ascension DePaul Services
- Ascension Health
- Ascension Health SmartHealth
- Ascension Illinois
- Ascension Insurance, Inc.

- Ascension Mercy Medical Center
- Ascension Michigan
- Ascension Providence
- Ascension Providence Rochester Hospital
- Ascension St. Elizabeth Hospital
- Ascension Via Christi
- Brighton Hospital
- Centro San Vicente
- Columbia St. Mary's Hospital
- Lourdes Hospital
- Providence Healthcare Network
- Saint Agnes Hospital
- Saint Thomas Health
- Seton Family Hospitals
- Seton Medical Center
- St. John Health System
- St. John Providence Health System
- St. Vincent Health
- St. Vincent's HealthCare
- St. Vincent's Health System
- Via Christi Health

35. At all relevant times, Ascension operated as an alter ego of its facilities.

36. At all relevant times, Ascension's facilities operated as its alter egos.

37. At all relevant times, Ascension and its facilities operated as alter egos of one another.

38. At all relevant times, Ascension exerted operational control over each of these facilities and any of its other facilites.

39. At all relevant times, Ascension had the authority to set pay practices at each of these facilities and any of its other facilites.

40. At all relevant times, Ascension substantially controlled the terms and conditions of employment for workers at each of these facilities and any of its other facilites.

41. At all relevant times, Ascension had a common control and management of labor relations regarding employees at each of these facilities and any of its other facilites.

42. At all relevant times, Ascension exerted operational control over its subsidiaries and alter egos.

43. At all relevant times, Ascension substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

44. At all relevant times, Ascension had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

45. Ascension employed and/or jointly employed, with its subsidiaries and alter egos, LeFlor and the Similarly Situated Workers.

46. Ascension and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

47. Ascension and its subsidiaries and alter egos are joint employers for purposes of Michigan Law.

## COVERAGE UNDER THE FLSA

48. At all relevant times, Ascension was an employer of LeFlor within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

49. At all relevant times, Ascension was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

50. Ascension was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

51. During at least the last three years, Ascension has had gross annual sales in excess of $500,000.

52. Ascension was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

53. Ascension employs many workers, including LeFlor, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

54. The goods and materials handled, sold, or otherwise worked on by LeFlor and other Ascension employees and that have been moved in interstate commerce include, but are not limited to, medical equipment and suppplies.

## FACTS

55. Ascension is a healthcare organization operating facilities across the unitd states. Ascension, About, https://www.ascension.org/About (last visited May 2, 2022).

56. Acsension provides clinical and network servies, ventur capital investing, investment management, biomedical engineering, facilities management, risk management, and contracting through its own group purchasing organization. Ascension, About, https://www.ascension.org/About (last visited May 2, 2022).

57. Many of Ascension's employees are non-exempt hourly and salaried workers.

58. Since at least 2021, Ascension has used timekeeping software and hardware operated and maintained by Kronos.

59. On or about December 11, 2021, Kronos was hacked with ransomware.

60. The Kronos hack interfered with the ability of its customers, including Ascension, to use Kronos's software and hardware to track hours and pay employees.

61. For at least a portion of time following the Kronos hack, Ascension failed to keep accurate track of the hours that LeFlor and Similarly Situated Workers worked.

62. Instead, Ascension has used various methods to estimate the number of hours LeFlor and Similarly Situated Workers work in each pay period.

63. For example, Ascension issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

64. As a result of Ascension's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

65. Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

66. LeFlor is one of the thousands of employees affected by these pay and timekeeping practices.

67. Instead of paying LeFlor for the hours she actually worked (including overtime hours), Ascension simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** LeFlor's actual hours worked and regular pay rates, in multiple workweeks.

68. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

69. Ascension knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

70. Ascension knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

71. Ascension could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

72. Instead of accurately tracking hours and paying employees their overtime, Ascension decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

73. It was feasible for Ascension to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

74. But Ascension chose not to do that.

75. In other words, Ascension pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

76. LeFlor is just one of the many Ascension employees who had to shoulder the burden of this decision by Ascension.

77. LeFlor was a non-exempt hourly employee of Ascension.

78. LeFlor regularly worked over 40 hours per week for Ascension.

79. LeFlor's normal, pre-Kronos hack hours are reflected in Ascension's records.

80. Since the Kronos hack, Ascension has not paid LeFlor on time, if at all, for her actual hours worked each week.

81. Since the hack took place, Ascension has not been accurately recording the hours worked by LeFlor and its other workers.

82. Even when Ascension has issued payment to LeFlor for any overtime, the overtime is not calculated based on LeFlor's regular rates, as required by federal law.

83. Ascension was aware of the overtime requirements of the FLSA.

84. Ascension nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as LeFlor.

85. Ascension's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

86. The full overtime wages owed to LeFlor and the Similarly Situated Workers became "unpaid" when the work for Ascension was done—that is, on LeFlor and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

87. At the time Ascension failed to pay LeFlor and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Ascension became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

88. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

89. Any payment made by Ascension to LeFlor or the Similarly Situated Workers that Ascension may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

90. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

91.     Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Ascension's acts and omissions resulting in the unpaid wages in the first place.

92.     LeFlor and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Ascension under federal and Michigan law.

### COLLECTIVE ACTION ALLEGATIONS

93.     LeFlor incorporates all other allegations.

94.     Numerous individuals were victimized by Ascension's patterns, practices, and policies, which are in willful violation of the FLSA.

95.     Based on her experiences and tenure with Ascension, LeFlor is aware that Ascension's illegal practices were imposed on the FLSA Collective.

96.     The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

97.     These employees are victims of Ascension's respective unlawful compensation practices and are similarly situated to LeFlor in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

98.     The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

99.     Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

100.    Ascension's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

101. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

102. LeFlor incorporates all other allegations.

103. The illegal practices Ascension imposed on LeFlor were likewise imposed on the Michigan Class members.

104. Numerous other individuals who worked for Ascension were were not properly compensated for all hours worked, as required by Michigan law.

105. The Michigan Class is so numerous that joinder of all members of the class is impracticable.

106. Ascension imposed uniform practices and policies on LeFlor and the Michigan Class members regardless of any individualized factors.

107. Based on her experience and tenure with Ascension, as well as coverage of the Kronos hack, LeFlor is aware that Ascension's illegal practices were imposed on the Michigan Class members.

108. Michigan Class members were all not paid their proper overtime on time, if at all, when they worked in excess of 40 hours per week.

109. Ascension's failure to pay wages and overtime compensation in accordance with Michigan law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Michigan Class members.

110. LeFlor's experiences are therefore typical of the experiences of the Michigan Class members.

111. LeFlor has no interest contrary to, or in conflict with, the members of the Michigan Class. Like each member of the proposed class, LeFlor has an interest in obtaining the unpaid wages and other damages owed under the law.

112. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

113. Absent this action, many Michigan Class members likely will not obtain redress of their injuries and Ascension will reap the unjust benefits of violating Michigan law.

114. Furthermore, even if some of the Michigan Class members could afford individual litigation against Ascension, it would be unduly burdensome to the judicial system.

115. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

116. The questions of law and fact common to each of the Michigan Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether the Michigan Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b. Whether Ascension's failure to pay overtime at the rates required by law violated Michigan's wage and hour laws.

117. LeFlor's claims are typical of the Michigan Class members. LeFlor and the Michigan Class members have all sustained damages arising out of Ascension's illegal and uniform employment policies.

118. LeFlor knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

119. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO LEFLOR AND THE FLSA COLLECTIVE

120. LeFlor incorporates all other allegations.

121. By failing to pay LeFlor and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, Ascension violated the FLSA. 29 U.S.C. § 207(a).

122. Ascension owes LeFlor and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

123. Likewise, Ascension owes LeFlor and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

124. Ascension knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

125. Because Ascension knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Ascension owes these wages for at least the past three years.

126. Ascension's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

127. Because Ascension's decision not to pay overtime was not made in good faith, Ascension also owes LeFlor and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

128. Accordingly, LeFlor and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION— VIOLATIONS OF THE MWOWA AS TO LEFLOR AND THE MICHIGAN CLASS

129. LeFlor incorporates all other allegations.

130. The conduct alleged in this Complaint violates the MWOWA. MICH. COMP. LAWS § 408.411 *et seq*.

131. At all relevant times, Ascension has been an "employer" within the meaning of the MWOWA. MICH. COMP. LAWS § 408.412(d).

132. At all relevant times, Ascension employed LeFlor and the Michigan Class members as "employees" within the meaning of the MWOWA. MICH. COMP. LAWS § 408.412(e).

133. The MWOWA requires an employer like Ascension to pay employees at a rate no less than the minimum wage for each hour worked. MICH. COMP. LAWS §§ 408.413, 408.414.

134. As a result of Ascension's failure to pay LeFlor and the Michigan Class at a rate no less than the minimum wage for all hours worked, Ascension violated the MWOWA.

135. The MWOWA requires an employer like Ascension to pay overtime to all non-exempt employees. MICH. COMP. LAWS §§ 408.413, 408.414a(a).

136. LeFlor and the other Michigan Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. MICH. COMP. LAWS § 408.414(a).

137. Within the applicable limitations period, Ascension had a policy and practice of failing to pay proper overtime to LeFlor and the Michigan Class members for their hours worked in excess of 40 hours per week.

138. As a result of Ascension's failure to pay proper overtime to LeFlor and the Michigan Class members for work performed in excess of 40 hours in a workweek, Ascension violated the MWOWA.

139. The MWOWA requires an employer like Ascension to make and provide employees with accurate wage statements each pay period. MICH. COMP. LAWS § 408.417.

140. Within the applicable limitations period, Ascension had a policy and practice of failing to make and provide accurate wage statements required by the MWOWA.

141. As a result of Ascension's failure to pay proper overtime to keep the records required by the MWOWA, Ascension violated the MWOWA.

142. LeFlor and the Michigan Class members are entitled to recover their unpaid wages, liquidated damages in an amount equal to unpaid wages, attorneys' fees, costs, and all other legal and equitable relief provided under the MWOWA. MICH. COMP. LAWS § 408.419(a).

### JURY DEMAND

143. LeFlor demands a jury trial on all issues.

### RELIEF SOUGHT

LeFlor prays for judgment against Ascension as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order certifying a class action for the Michigan law claims;

    c. For an order finding Ascension liable for violations of federal wage laws with respect to LeFlor and all FLSA Collective members covered by this case;

    d.    For an order finding Ascension liable for violations of Michigan wage laws with respect to LeFlor and all Michigan Class members covered by this case;

    e.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to LeFlor and all FLSA Collective members covered by this case;

    f.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Michigan wage laws to LeFlor and all Michigan Class members covered by this case;

    g.    For an equitable accounting and restitution of wages due to LeFlor and all FLSA Collective and Michigan Class members members covered by this case;

    h.    For a judgment awarding attorneys' fees to LeFlor and all FLSA Collective and Michigan Class members covered by this case;

    i.    For a judgment awarding costs of this action to LeFlor and all FLSA Collective and Michigan Class members covered by this case;

    j.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to LeFlor and all FLSA Collective and Michigan Class members covered by this case; and

    k.    For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ___*/s/ Matthew S. Parmet*___

**Matthew S. Parmet**
E.D. Mo. Bar # 24069719(TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**